IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| RONNIE HARRIS, #294716, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> MICHAEL McCALL, ) <br> ) <br> Respondent. ) <br> _____ ) | Civil Action No. 3:09-948-HFF-JRM <br><br> **ORDER AND** <br> **REPORT AND RECOMMENDATION** |

Petitioner, Ronnie Harris ("Harris"), is an inmate at the South Carolina Department of Corrections serving fifteen (15) years imprisonment for committing a lewd act on a child and twenty (20) years imprisonment for criminal sexual conduct with a minor (first degree). Harris filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on April 10, 2009. Respondents filed a return and motion for summary judgment on July 6, 2009. Because Harris is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on July 7, 2009 advising him of his responsibility to respond to the motion for summary judgment. Harris filed a response on August 10, 2009. Respondents filed a reply on September 2, 2009.

**<u>Motions</u>**

Harris has filed two motions in connection with his present petition: "Motion to Stay and Abeyance...Motion to Amend Pursuant to Title 28 U.S.C. § 2242" (Doc. No. 13) and "Motion to

1

Show Cause for Procedural Default" (Doc. No. 17). Respondent has filed opposition memoranda.

The motion to stay essentially seeks a ninety (90) days continuance so that Harris may "properly clarify the claims" in his petition. The motion contains some legal argument but gives no suggestion as to any new claims nor any indication that Harris has matters pending in state court which he intends to exhaust and add to his pending petition.[1] The motion to show cause is simply a response to Respondent's argument that one of Harris' claims is procedurally barred. This motion also contains legal arguments.

Harris' motions are **denied**. The undersigned has considered his legal arguments in preparing this Report and Recommendation.

## Background and Procedural History

Harris was charged with molesting his nine (9) year old daughter in April of 2001 in Greenville County. (App. 257). He was convicted by a jury in July of 2003. Harris was represented by Daniel J. Farnsworth, Esquire at trial.

Direct appeal was by way of an Anders[2] brief filed through the South Carolina Office of Appellate Defense raising the following issue:

> The lower court erred in ruling that appellant's verbal consent to search was valid, when he refusal to sign a consent form.

The appeal was dismissed on Harris' request.

Harris filed an application for post-conviction relief ("PCR") on July 2, 2004. He alleged that

---

[1] In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court held that a district court has discretion to stay and hold in abeyance a mixed petition to allow petitioner to present his unexhausted claims to the state courts, and then return to federal court.

[2] Anders v. California, 386 U.S. 738 (1967).

2

Mr. Farnsworth had been ineffective at trial for failing to object to certain testimony as hearsay. (App. 221). An evidentiary hearing was held on February 16, 2005. (App. 233). Harris was represented by Caroline Horlbeck, Esquire. Ms. Horlbeck moved to add a further claim of ineffective assistance of counsel, failure to argue motive during summation, but after consultation with Harris, withdrew the claim. It was concluded that presentation of evidence was unnecessary since the hearsay objection claims could be decided on the record. The PCR court took the case under advisement and issued an order of dismissal filed August 15, 2006. (App. 247).

Harris filed a *pro se* "Motion for a 59(e) Ruling" seeking to require "the judge to address all the issues raised in applicants (PCR) application and additional hearing issues." (App. 253). The motion was denied by order filed August 29, 2006. (App. 256).

A petition for writ of certiorari was filed in the South Carolina Supreme Court by the South Carolina Commission on Indigent Defense raising the following issue:

Trial counsel erred in failing to object to inadmissible hearsay testimony in the case.

The petition for writ of certiorari was granted on February 7, 2008 and briefing was ordered. After briefing, the petition was "dismissed as improvidently granted." *See* Harris v. State, Op.No. 2009-MO-006 (filed Feb. 9, 2009).

### Grounds for Relief

In his present petition, Harris alleges that he is entitled to a writ of habeas corpus because his trial attorney, Mr. Farnsworth, was ineffective in that he failed:

1. to object to inadmissible hearsay testimony; and
2. to properly challenge the DNA evidence admitted at trial.

3

**Discussion**

**A. Procedural Bar**

Respondent asserts that Harris' second claim of ineffective assistance of counsel, that Mr. Farnsworth failed to challenge the State's DNA evidence, was not presented to the state courts and is procedurally barred.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

    **1.    Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq*. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims

5

specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[3] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

---

[3]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

## 2. Procedural Bypass[4]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and

---

[4] This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

7

'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the

claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

9

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The record shows Agent Grayson Douglas Amick of the South Carolina Law Enforcement Division ("SLED") was qualified as an expert, and testified that a semen stain on the bed sheets came from Harris. The victim's DNA was also found on the same sheets. No objection was made to this evidence. (App. 113-127). No issue relating to the DNA evidence was raised in the PCR application. (App. 221). At he PCR hearing, the court found that counsel erred in not objecting to hearsay testimony. The DNA evidence was discussed with respect to the prejudice prong of the Strickland test, i.e., given the error prong of the Strickland test was proved, could Harris show prejudice. (*see* discussion below). Harris PCR counsel, Ms. Horlbeck, stated that "I do think that counsel did do a good job of watering down the DNA evidence." (App. 242). In the PCR court's order of dismissal, the DNA evidence was discussed only with respect to the prejudice prong of the Strickland test. (App. 250). The DNA evidence was not mentioned in Harris' *pro se* Rule 59(e) motion (App. 253), nor was it mentioned in the petition for writ of certiorari and subsequent briefing.

Therefore, the undersigned concludes that Harris did not assert in state court that Mr. Farnsworth was ineffective for failing to challenge the DNA evidence. In the "Motion to Show Cause for Procedural Default" Harris attempts to establish "cause and prejudice" for the procedural default by arguing that his PCR counsel, Ms. Horlbeck, was ineffective. However, as discussed above, ineffective assistance of PCR counsel, or PCR appellate counsel, cannot form the basis of cause. Wise v. Williams, *supra*.

Further, there is nothing in the record before the Court to show that the DNA evidence was improperly admitted or that the testimony was not accurate. Harris does not allege that he has evidence to show that the semen on the sheet was not his.

**B. Ineffective Assistance of Counsel**

Since Harris filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

11

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986).

12

In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Harris asserts that his trial attorney was ineffective for not objecting to certain hearsay testimony. Specifically, Catherine Sullivan, the victim's great grandmother, Cynthia Stone, a nurse at Greenville Memorial Hospital, and James Riley Austin, an Investigator with the Greenville County Sheriff's Office, testified about statements the victim made to them concerning the sexual assault by her father. (*See* App. 74, 78 and 102 respectively). The PCR court found that counsel committed

13

error by not objecting to this testimony, and that Harris had established the first prong of the Strickland test. The court then moved to the second part of the analysis and found:

> This Court must determine whether the Applicant has proven a reasonable probability that the outcome of the trial would have been different had trial counsel objected to this testimony. This Court notes the fact that the statements are cumulative to other testimony (including the victim's at trial) does not answer this question. The South Carolina Supreme Court has made it clear the improper admission of prior consistent statements is not harmless error simply because they are cumulative. *See* State v. Foster, 354 S.C. 614, 582 S.E.2d 426 (2003) ("[o]n the contrary, 'it is precisely this cumulative effect which enhances the devastating impact of improper corroboration.'") (citation omitted).
> In this case, however, this Court finds there is strong evidence supporting the convictions from the State's DNA expert, Grayson Douglas Amick of the South Carolina Law Enforcement Division. Amick testified to finding a mixture of DNA from both the victim and the Applicant on the sheet of the bed where the crime occurred. While trial counsel did an effective job in minimizing the impact of Amick's testimony, the impact remained very strong. Amick testified that, as the existence of the Applicant's semen mixed with DNA from the victim most likely came from the victim's bodily fluids. (Trial transcript, pp. 120-122). This Court notes Dr. John David Wilson, Jr. Also testified that, on the nine-year-old victim's breasts, "she had what appeared to be bruises, such or bite marks all around." (Trial transcript, p. 89, lines 8-9). As such, this Court finds there is not a reasonable probability the outcome of the trial would have been different had trial counsel made hearsay objections.
> Accordingly, the Applicant has failed to prove the second prong of Strickland - that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. *See* Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

(App. 250-251).

Under the differential standard of 28 U.S.C. § 2254(d), habeas relief is only available where the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Evans v. Smith, 220 F.3d 306, 312 (4th Cir. 2000). The undersigned concludes that Harris has not shown that the PCR court's ruling was

contrary to, or an unreasonable application of, Strickland and its progeny. In other words, Harris has not shown a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the hearsay testimony. Williams v. Taylor, *supra*. This result is compelled by the other evidence of Harris' guilt in the record cited by the PCR court, including the victim's testimony, the DNA evidence, and the medical testimony. *See* Watson v. South Carolina, 2007 WL 2247822 (D.S.C.) (petitioner failed to show prejudice from admission of hearsay testimony of statements of sexual assault of victim based in part on victim's testimony and medical evidence of record).

## Conclusion

Based on a review of the record, it is recommended that Respondents' motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

							_____
							Joseph R. McCrorey
							United States Magistrate Judge

October 7, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).